UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KIMBERLY ANN SPEIGHT,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

No. 2:17-cv-01120 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff applied on January 22, 2013 for SSI, alleging disability beginning December 5, 2010. Administrative Transcript ("AT") 13. She subsequently amended her alleged onset date to January 22, 2013, the date she filed her application. AT 13. Plaintiff alleged she was unable to work due to depression, anxiety, chronic thrombosis, learning problems, back and nerve

1

problems, bursitis, tendonitis, and asthma. AT 17, 75. In a decision dated September 23, 2015, the ALJ determined that plaintiff was not disabled.[1] AT 13-23. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since January 22, 2013, the application date.
>
> 2. The claimant has the following severe impairments: mild medical and patellofemoral joint space narrowing in the knees, mild L5-S1 disc space narrowing, obesity, asthma, tobacco dependence, depression, anxiety, and post-traumatic stress disorder (PTSD).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work, with the ability to lift and/or carry 50 pounds occasionally and 25 pounds frequently; to stand and/or walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. She can occasionally climb ramp, stairs, ladders, ropes, and scaffolds; occasionally stoop and crawl; and frequently balance, kneel and crouch. She needs to avoid concentrated exposure to extreme cold and heat as well as fumes, odors, dusts, gases, and poor ventilation. In addition, the claimant is able to perform simple tasks and can have occasional public contact.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born on December 29, 1978 and was 34 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high-school education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since January 22, 2013, the date the application was filed.

AT 15-23.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred by finding plaintiff's pulmonary embolism, deep vein thrombosis, and costochondritis to be non-severe and failing to consider the combined effect of her impairments; (2) the ALJ's mental residual functional capacity determination was not supported by substantial evidence; (3) the ALJ improperly discredited plaintiff's subjective symptom testimony; and (4) the ALJ's hypothetical to the Vocational Expert at Step Five was incomplete.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Non-Severe Impairments

Plaintiff asserts that the ALJ erred by finding her history of pulmonary embolism, deep vein thrombosis, and costochondritis to be non-severe and failing to consider the combined effect of her impairments.

An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). Basic work activities encompass "the abilities and aptitudes necessary to do most jobs," including "(1) physical functions such as walking, standing, sitting, lifting and carrying, (2) capacities such as seeing, hearing, and speaking, (3) understanding,

carrying out, and remembering simple instructions, (4) use of judgment, (5) responding appropriately to supervision, co-workers, and usual work situations, and (6) dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

The ALJ found that certain of plaintiff's impairments, "including a history of pulmonary embolism, deep vein thrombosis, . . . and costochondritis,[2]" were not severe within the meaning of the regulations. AT 15. However, the ALJ also stated that she considered "any limitations caused by the claimant's non-severe impairments in the determination of the claimant's residual functional capacity." AT 16. See Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (internal quotes and citations omitted). Thus the issue before the court is whether the ALJ erroneously failed to include any limitations caused by these impairments in the RFC.

Social Security Ruling 96-8p sets forth the policy interpretation of the Commissioner for assessing residual functional capacity. SSR 96-8p. Residual functional capacity is what a person

---

[2] "Costochondritis is a condition that causes chest pain due to inflammation of the cartilage and bones in the chest wall. Costochondritis occurs when there is inflammation at the junction of the rib bone and breastbone (sternum)." Source: https://www.verywellhealth.com/costochondritis-tietzes-syndrome-2548833 (last visited December 7, 2018).

5

"can still do despite [the individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental capabilities"). RFC is assessed based on the relevant evidence in the case record, including the medical history, medical source statements, and subjective descriptions and observations made by the claimant, family, neighbors, friends, or other persons. 20 C.F.R. §§ 404.1545(a)(1), 404.1545(a)(3). When assessing RFC, the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work[.]" 20 C.F.R. §§ 404.1545(a)(4).

The ALJ noted plaintiff's claim that due to chest pain and chronic thrombosis, among other issues, she could only stand for 15 minutes at a time, walk for five minutes at a time, and sit for 45 to 60 minutes at a time. AT 17. The ALJ also noted evidence showing that plaintiff had a history of chest pain and other medical issues; however, "radiological studies of record showed that her chest had no acute pulmonary process[.]" AT 18, citing AT 758. Discussing plaintiff's chest pain and pulmonary embolism, the ALJ noted that radiological studies of plaintiff's chest had been negative. AT 15. The ALJ also found that plaintiff's history of costochondritis "does not meet the durational requirements of the Act." AT 16.

Plaintiff argues that the ALJ erroneously discounted plaintiff's costochondritis based on negative chest x-rays, as this condition is not determinable from radiological studies.[3] Plaintiff was diagnosed with chest pain and/or costochondritis numerous times in her medical history. AT 263-265, 281, 326, 334-335, 339, 360, 414, 479, 622, 624, 640, 715, 788, 916, 922, 932, 935, 961-962, 964. However, most of these records predate the alleged disability period of January 2013 through September 2015. Similarly, medical records submitted after the September 2015 hearing were deemed by the Appeals Council to be outside the period under consideration. AT 2. Plaintiff has not shown that, during the relevant period, her recurring costochronditis imposed physical limitations beyond those reflected in the RFC. Thus any error in the ALJ's reliance on

---

[3] "An X-ray or other imaging studies will not show signs of costochondritis." Source: https://www.medicalnewstoday.com/articles/318797.php (last revised December 10, 2018).

chest x-rays was harmless.

As to plaintiff's DVT, the ALJ noted plaintiff's 2012 diagnosis of "chronic left leg pain secondary to deep venous thrombosis." AT 18; see AT 715. After presenting to the emergency room in April 2013 and being diagnosed with acute DVT of the lower left leg, plaintiff was put on Coumadin, an anticoagulant. AT 18, AT 736-737. The ALJ wrote that "[s]ubsequent medical records revealed no acute deep venous thrombosis or pulmonary embolism." AT 18; see AT 797. The ALJ also noted that medical records reflecting treatment in 2014 and 2015 found plaintiff to "ambulate with a steady gait and have no motor weakness." AT 19; see AT 917. The ALJ concluded that plaintiff's DVT "was shown to have resolved with treatment." AT 15.

Plaintiff asserts that no treating physician or medical expert opined that plaintiff's chronic DVT was resolved, and that the ALJ confused chronic and acute DVT. However, there is scant objective evidence that plaintiff's DVT imposed functional limitations beyond those in the RFC.

Plaintiff next asserts that the ALJ erred in failing to consider the combined effect of her lower extremity impairments -- degenerative knee disease, chronic DVT and morbid obesity -- in formulating the RFC.[4] The ALJ noted plaintiff's history of obesity and knee pain, but also found that plaintiff had "no more than mild restrictions of activities of daily living," including "preparing meals, cleaning, doing laundry, vacuuming, using a computer, shopping and spending time with others." AT 16, 18, 21. The ALJ also noted April 2013 medical records in which plaintiff "acknowledged that she was usually in a good state of health. The claimant was reported to weigh 235 pounds with full range of motion of the neck, back, shoulders, elbows, wrists, hips,

---

[4] Obesity was eliminated from the Listing of Impairments (Listing 9.09) because the Social Security Administration determined that the criteria in the Obesity Listing did "not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." Social Security Ruling (SSR) 02-01p (2002). Obesity remains, however, a factor that may be considered at any step in the sequential evaluation. See id. The ruling further provides:

> [W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record.

7

knees, ankles, fingers, and toes. She also had no tenderness or joint deformity[.]" AT 18; see AT 736-737. X-rays of plaintiff's knees showed only mild degenerative changes and no evidence of joint effusion or acute injury, AT 749, 823, 896; an x-ray of the lumbar spine showed mild L5-S1 disc space narrowing but no alignment abnormalities. AT 897. The ALJ also credited opinions by State medical consultants who, having reviewed plaintiff's medical records, determined that she could lift, carry, stand, walk, and perform other activities at limits later incorporated into the RFC. AT 18.

As plaintiff has not shown that the above impairments, alone or in combination, caused or contributed to functional limitations beyond those set forth in the RFC, the court finds no error on this basis. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("In making his RFC determination, the ALJ took into account those limitations for which there was record support that did not depend on [claimant's] subjective complaints."); Baston v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, court must defer to the Commissioner's decision).

B. Mental Limitations

The ALJ gave "great weight" to the opinions of State agency medical consultants Anna Franco, Psy.D. and Dara Goosby, Psy.D, who

> diagnosed the claimant with affective and anxiety disorders and opined that she was moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public. In addition, the medical consultants determined that the claimant was <u>able to perform simple one- to two-step work</u>; that she could sustain concentration, persistence, and pace for a usual day or week with customary work breaks; that she should have limited public contact; and that she could otherwise interact and adapt accordingly.

AT 20; see AT 66, 69-71, 81, 85-89 (emphasis added). The RFC limited plaintiff to "simple tasks" and occasional public contact. AT 17.

At Step Five, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala,

60 F.3d 1428, 1432 (9th Cir.1995)). Based on the VE's testimony, the ALJ concluded that plaintiff was capable of performing at least three jobs: mail keeper, hand packager, and housekeeper. AT 22. According to the Department of Labor's Dictionary of Occupational Titles ("DOT"), two of these jobs require a Reasoning Level of 2 or 3. DOT (4th Ed. 1991) § 209.687-026 (mail clerk, Reasoning Level 3) and § 920.587-018 (hand packager, Reasoning Level 2).

In Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1003 (9th Cir. 2015), the Ninth Circuit observed that an RFC limiting a claimant to one- and two-step tasks is consistent with jobs requiring Reasoning Level 1. Thus, two of the three jobs the VE identified had greater reasoning requirements than plaintiff's ability to perform simple one- to two-step work. Under Zavalin, 778 F.3d at 846, when a VE testifies that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle, the ALJ is required to reconcile the inconsistency." 778 F.3d at 846. "The ALJ must ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." Id.; see also Social Security Ruling 00-4p (providing that when there is an apparent unresolved conflict between the vocational expert's testimony and the DOT, the ALJ must clarify the discrepancy). Plaintiff contends the ALJ failed to meet this requirement.

However, the third job identified by the VE has a Reasoning Level of 1. DOT § 381.687-014 (housekeeper). The VE testified that this job involved unskilled light work, with 55,000 such jobs in California and 370,000 in the United States. AT 54-55. See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 523 (9th Cir. 2014) (2,500 jobs in California or 25,000 jobs in national economy met the statutory standard for "significant" numbers); see also 20 C.F.R. § 404.1566(b) (providing that "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet") (emphasis added). Because the ALJ relied on VE testimony indicating there was at least one job that someone with plaintiff's RFC (including her mental limitations) could perform[5], and this job

---

[5] Though plaintiff claims the job of housekeeper is inconsistent with her social and environmental limitations in the RFC, DOT § 381.687-014 does not require more than "occasional public

existed in significant numbers in the national economy, any error as to the other two jobs was harmless. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("we may not reverse an ALJ's decision on account of an error that is harmless")

C. Credibility

Plaintiff next claims that the ALJ improperly found plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms to be less than fully credible. See AT 21. The ALJ continued:

> For example, despite their [plaintiff's and her fiancée's] allegations, the claimant has demonstrated that she is able to perform a significant number of activities of daily living, including preparing meals, cleaning, doing laundry, vacuuming, using a computer, shopping, and spending time with others. In addition, the claimant alleged that she was only able to lift 10 pounds, which is inconsistent with medical opinions demonstrating that she can perform medium work. Moreover, the claimant has a poor work record and has demonstrated secondary gain motives to avoid paying child support. She has also demonstrated improvement with psychiatric treatment and to have done poorly when she is off medications (see e.g., Exhibit 5F/16, 32). In sum, the above residual functional capacity assessment is supported by the medical evidence of record.

AT 21.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the

---

contact' or "concentrated exposure" to hazardous conditions or materials.

applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ credited State agency consultants Dr. Eskander's and Dr. Tambellini's opinions that plaintiff could perform medium work, including lifting up to 50 pounds occasionally and 25 pounds frequently. See AT 18, 67-69, 83-85. These findings were consistent with numerous unremarkable clinical records as to plaintiff's respiratory and musculoskeletal functioning, including findings as to gait, range of motion, strength, sensation, reflexes, and the absence of edema, numbness, atrophy, or weakness. See, e.g., AT 660, 737, 755-756, 918, 935, 962. See Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001) (ALJ properly discounted claimant's symptom testimony where "neurological and orthopedic evaluations have revealed very little evidence of any significant disabling abnormality of the claimant's upper or lower extremities or spine"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly discounted claimant's testimony of severe pain in light of "minimal, conservative treatment" and the absence of "muscular atrophy or any other physical signs of an inactive, totally incapacitated individual"). Plaintiff's medical treatment largely consisted of prescription medication and

outpatient treatment, as well as recommendations regarding nutrition, habits, and physical activity.  See AT 18-21, 39, 876, 890-891.

The ALJ also cited plaintiff's ability to perform a wide range of daily activities, as noted above.  See AT 32, 42-44, 46-48.  Plaintiff's "poor work record" was also a valid consideration in assessing her credibility.  See AT 34 (plaintiff's testimony that, except for one job as home health aide, she had not worked on a full-time basis for the past fifteen years).  See also 20 C.F.R. § 416.929(c)(3) (prior work record a valid consideration when evaluating the claimant's symptom testimony).

Based on the foregoing, the undersigned concludes that the ALJ used the proper process and provided proper reasons for finding plaintiff less than fully credible as to her symptoms.

D.  Vocational Expert

Lastly, plaintiff takes issue with the ALJ's hypothetical questions to the VE, arguing that the RFC omitted critical limitations as set forth in plaintiff's earlier claims.  As plaintiff has not established that the RFC was invalid, the court finds no error in the hypothetical posed by the ALJ and resulting in a finding of nondisability.  See AT 22, 54-55.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 24) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 27) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  December 18, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/speight1120.ssi.ckd